Number 171435, Aljari Lopez-Rosario, et al. v. Programa Seasonal Head Early Start de la Diocese de Mayaguez. And good morning. I respectfully request three minutes. How much? Three minutes, please. Three? Yes. Okay. Thank you. You got it. Thank you. May it please the Court and pleasant good morning, Your Honors. Eugenio Hayhill on behalf of the appellant today. Your Honors, before us essentially what we have is an issue as to whether or not the District Court failed to properly apply to the facts that came out of the discovery, Rule 56. It is our contention that the Court what essentially did was assert what should have been the fact finder's duty in this case and basically going to the lengths of dismissing the case as it did. Why do we say this? For two essential elements. Primarily as we are dealing with an age discrimination case, we are looking at two particular issues that draw our attention. One being the various adverse employment actions which took place. Unfortunately, District Court what emphasized and tended to look at the most was the reassignment in his hourly and his daily standard of work was instead of working the eight hours, he was working four hours a day. However, that was not the only adverse employment action that took place. We had numerous which came out of the discovery, namely among them in was not provided a proper proceeding within programma, that being the administrative proceedings. We had this back and forth in meetings and particularly in letters and I draw the attention to that because we note from the record that there were particularly two instances where letters were sent to him and yet they were backdated. When he appealed pursuant to the you had five days to file this appeal. Doesn't the record show that they were sending him certified letters and he refused to pick them up? Well, the record shows that they did send him letters certified mail. He didn't pick them up, isn't that correct? Well, he didn't pick them up, he did not get them and the record also shows Judge Thompson that he would receive letters hand delivered while at work. Now granted, let's put it within that context. If he gets the first letter, it takes all this time, why do they then do the same thing a second time and take all this time in getting the letter out to him? And again, assuming that that's what happened, what they should have done when they actually gave him the letter the second time, just issue a new letter with a new date in order to provide for the administrative proceedings of the appeals and they didn't do this. And the importance of that issue, Your Honor, is that it shows ultimately what the appellee was getting to. It's not just in the context of like the district court said, no, no, no, it's just a matter of the adverse employment action being that he's not just working four hours instead of eight. So you're saying that he refused to pick up certified letters and as a courtesy to him, they gave him, they hand delivered letters to him and that we should fault them for that? Your Honor, the, and no, and my response is for the following reason. What the record shows is that appellee contents, they send the letter certified and that came out of the deposition. His response to that is I didn't get the letter. Now whether he actually refused to accept them or not, I think it's a matter that would be in controversy. Well, it's his burden. If someone sends you a certified letter, you just can't sit back and say nothing. You've got to say, well, I never got notice of it or I didn't go pick it up and then they can follow up on that. Otherwise, the only inference that anyone can draw is, that's why you send certified letters. The only inference we can draw is that he didn't pick it up. And Your Honor, if I may then just placing it within that specific context that you've indicated, let us concede for the matters of this argument just that issue. The problem is, again, when we take the case in its full context and that's really the thrust of our argument in this appeal is that the district court limited its opinion to specific issues in the case and it failed to take the totality of the circumstances. So, let's say for argument's sake that okay, he refused to get the letter. Well, still the appellee gave him the letter later on and said no, your time is up because when you actually got it, the five days for the administrative appeal had passed. Well, fine, maybe initially it was a burden on me, but wait a minute, now you have a burden. If you're going to place me on notice, why are you taking this long and basically using your own internal proceedings against me so I cannot go up on appeal? Even if you assume you've got something on this issue, what evidence is there that any younger employee was treated better than he was? As I understand it, you've got Munoz and Ruiz as the two possible other employees. Munoz was the same age and similarly treated and then Ruiz, all the evidence shows is that he was, quote, in his 40s and your client's 50 at the time. My client was 55, I believe, at the time. Munoz was and there's two issues right there. Munoz was the other individual in the same set of circumstances and again, this is why I mentioned that the district court erred in not taking everything into consideration and Judge, I intend to respond to your question, but it's broken down into segments. The first one being that Munoz was the other handyman slash driver who had the same position as my client. Now what happens is that Munoz, after the austerity measures take place, resigns. So that's not an issue for purposes of doing the legal analysis of what we're here for. However, it is important because when we take into consideration the fact that he resigned, remembering that back in May before he resigned, he was told, well, for this position, we only need one person, that's why we're breaking your itineraries by half because between the two of you, then we just have one. So they cut both hours. Right, they cut the two of them. So they were treated in the same. And at the same age, how does that help you? I intend to get to that. That's why I'm saying there's two. By the way, when you say your client was 55, the record shows he was born March of 1963. That's correct. And when did the determination occur? The determination occurred in 2013 to 2014. So he was 50 to 51. 51, that's right. No, it's not. It's 55. So then where do you get the age difference with the other fellow? It's Ruiz. It's not Munoz. Ruiz is the one that is younger than him. No, what's the evidence that he's young? The only evidence in the record is that Ruiz was in his 40s. In his 40s. So we have to assume he's 49. That's not, under our case law, that's not a big enough age difference between 50 and 49. There is a distinction within the cases, and I think the district court mentioned it. In my brief, I addressed that with the first circuit court case, which gets into the relevance. Does any case that says a one-year difference is enough? It may be. In what case? Your Honor, in my brief, and I can relate to it, there's a specific site to a case when addressing it. The issue here is that the cases do not distinguish specifically one year, two years, three years, but get into an analysis of, I'm trying to remember the adjective to utilize, as to whether it's more or less. But again, that is as it pertains to Ruiz. As to Munoz, the problem was that once he is out, he had indicated, well, now you have what you told me, just one individual for this position. Well, you haven't addressed the fact that both of them had their hours cut at the same time. You're skipping over to when he resigned, but you've reserved some time, and if we have additional questions for you, we'll pick them up. Very well. Thank you. May it please the Court. Jesus Morales Cordero on behalf of Appellees. The main gist of our defenses, there's no evidence whatsoever on the record to show any kind of disparate treatment, discriminatory treatment based on age. That is what the District Court found. Assuming that they had met three of the four prongs of the prima facie case, there is no disparate treatment in any of the supposed adverse personal actions. First, the reduction in working hours done in 2013 is totally documented that it was done uniformly to both occupants of the same position, which is driver, driver, handyman, not handyman, because the other guy, Reese, was occupying another position, which was different in the roster and did different functions. And secondly, the change was documented with a budget sequester, or sequester, that was, you know, and everyone knows that in 2013 that happened, and the budget of the program was cut, and not only did the decision to cut those hours, to guide for other measures, cut costing measures also. Secondly, about the proceedings. Regardless of when do we count the deadline to file the appeal, from a decision of the grievance committee that was done on the merits, and the record shows there is a minute of the grievance committee, and a decision on the merits that was notified to him, and regardless of whether we count the deadline from the date that the counsel pretends, when it was handed to him after he rejected, and there is evidence on the record that he rejected to pick up the mail, the certified mail. The fact is that he filed it before the wrong body. He had to appeal to the board of directors, or governing board, and he admitted in his deposition that he was aware of the regulations concerning the adjudicated proceedings. So the dismissal of the appeal cannot be considered in any fashion as an adverse personal decision. Third, the supposed constructive discharge. That's the third supposed adverse personal action. Well, the fact is that the program offered him a job. He was complaining that there has been a reclassification between driver-handyman to driver, but actually, the contract that was offered to him is in the record, and shows that he was offered the same amount of hours he had been working since May 2013, on February 2014, and for the title of the position, which was driver-handyman. And by the way, the applicant speaks about an emotion. I don't know how getting to be only the driver of kids of a tender age that are the responsibility of the program can be considered an emotion in comparison to changing window handles or light bulbs. That was the kind of thing that the handyman was doing part-time. So I don't understand how is it possible to argue that that was an emotion. You know, the driver-handyman is a different position. His argument is that a reduction in his work hours by half constitutes an adverse employment action. Yes, that's one of the things, but he also claims... Not that taking care of the children is an emotion. Excuse me? Not that taking care of the children is an emotion. He's saying, essentially, he can't live on half of his salary. No, no, that's one of the things, but he also claims, Your Honor, with all due respect to you, that that was an emotion because part of the title that was driver-handyman that was eliminated from being a handyman. He's claiming that, in addition to the fact that he's claiming that the reduction in hours and salary was the main adverse personal action he's complaining about. The truth is, just to summarize, the program has resented and the record shows objective non-discriminatory reasons and grounds to do the reduction in hours and to keep him on a reduced schedule after 2014. The record also shows that he was offered unemployment and he rejected it. And the record shows there is no disparate treatment in the grievance proceeding with anyone else, actually, that he failed to comply with the regulations of the adjudicated proceeding and that's why his appeal, his second appeal, he had won and it was considered on the merits. The second appeal was dismissed as a time barred, actually. Counsel, would you turn to the comparators, the fourth prong, and just deal with those for now? Oh, yes. We're going to run out of time. Yes. Well, my opponent has been unable to show the non-discriminatory grounds for the personal actions. You know, the fourth prong is he has to establish or has some credible evidence that the trial may find credible to establish that the treatment, the different actions that the program took towards him were taken because of his age. And, or, you know, he had the both four criteria established by the Supreme Court and by this circuit, of course, requires the appellant and the claimant in these kind of cases to establish that that was the only reason, that was the only reason that the program, I mean, the employer, for that matter, took the decision. And there is none on the record. So that, no evidence on the record to show that that was the, not only the main, but rather that it was a factor at all, that his age was a factor at all. So I took Brother Counsel to be saying, with respect to Munoz, that he resigned. And so there's something about that that makes the fact that the two of them got reduced hours not apples to apples. Do you have a response to that? Yes, of course. Actually, they occupied, it's apples to apples. Because Munoz and Lopez occupied the same position, performed the same functions, and were applied the same reduction in hours at the same moment simultaneously. Afterwards, Munoz resigned. And the record shows that the program had decided to use the funds saved from his resignation towards other ends. But this is the main thing. There's no replacement. I don't know how the appellant has been daring enough to argue to this court that there was a replacement. Mr. Lopez was never replaced by anyone. Actually, the record shows, and it's undisputed, that the program eliminated its transportation service to the participants and that the two positions that existed by Munoz and Lopez, respectively, of driver honeymen were eliminated. So there's no replacement whatsoever. And no showing, not even an attempt to show, that the decisions that Lopez is complaining about were based on his age. And could you address the evidence on the record with respect to age, with Ruiz versus Lopez? What does the record show? Well, the record shows that they did occupy different positions. Age, I'm just asking about age. No, the age. The age, as Cayeta just stated for the record, that he was around his 40s. That's the only evidence about the age of Ruiz. And there's no substantial. The standard, different to what Distinguished Brother Counsel stated, is not one or two years. No, no, there has to be a substantial difference in age for that to be a factor to be taken into consideration in a discrimination case based on age. So, yes, the plaintiffs, in this case the appellant, has no evidence to show that there was a substantial difference with the one he's claiming. But we don't accept and the record doesn't show that it replaced him. Ruiz was working there prior to any of the adverse personal actions. Thank you. Thank you. Thank you, Secretary. Diana, you're right. The adjectives I was thinking about, one was addressed by my esteemed counsel, that being whether or not it's substantial. The other one being significant, just talking about the difference in ages. I think it's extremely important for us to maintain within the context of what we're discussing, the issue, which I think is what the Court's really interested here in the fourth prong. And mindful of that, we have two elements to be considered. One, that being this issue of the difference in age. The other one being whether the employer filled that position, which was occupied by the appellee, showing that there was, in fact, still some use for it. And tying all of this together with the issue of Munoz, correct. Munoz was in the same set of circumstances. That doesn't address specifically the questions of your honors on this element. That addresses the different issue that we've been raising in our brief, that it's a totality of the circumstances that if when the sequestration went into place in May, the appellee's position was, okay, it's justified that I only have the two of you for half the time because I only need one. Our position is, well, if that is so, why is it that when Munoz resigns, voluntarily, we're not claiming that there was discrimination. Lopez is still there. Here's your perfect situation. It's just one. He was never given the position. So, again, this goes to the whole issue of what the appellee is intending to do when taken together in the context of the correspondence and the comment by Carrero and the other adverse employment actions. Was there any evidence that they then went out and hired a younger driver? No, there is no evidence as to that. What there is evidence to is that their claim that the 5.65 percent, I believe it was in the sequestration, made their life horrible financially. And yet we do see from the record that they opened at least two more centers that we know of. And at the time, the services that were allegedly not being provided were being provided in the other centers. I believe it was the center in San Germán or in Rincon that was closed. They could not account as to how much they had actually saved having closed that center, going again to this issue that their allegation for having taken the action of limiting the wages and the amount of work hours of Lopez was financially. In reality, it was not. And like I indicated earlier, we need to take into consideration the issue. And the one case I had mentioned that I was citing to was Vélez v. Thermal Kingdom, Puerto Rico, at page 15 of my brief, which addresses this issue under the fourth prong that it is a prima facie showing to be modest, meaning it doesn't have modest as being as grave as the appellee is indicating it to be. Therefore, we respectfully request that the court grant our appeal. Thank you, Your Honors. Awesome day.